HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

QUEST INTEGRITY USA, LLC,

    Plaintiff,

    v.

A.HAK INDUSTRIAL SERVICES US, LLC,

    Defendant.

CASE NO. C14-1971RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on review of Plaintiff's motion for a preliminary injunction and various motions and requests to seal that are ancillary to that motion. In light of this order, the court directs the clerk to TERMINATE all pending motions (Dkt. ## 36, 42, 47, 65) and to CREATE A MOTION CALENDAR for May 15, 2015, to correspond to the noting date of the last of those motions. The clerk shall entitle that motion calendar "Plaintiff's Motion for Preliminary Injunction, Motions to Seal, and Plaintiff's Motion to Exclude Testimony of Dr. Leonard Bond."

## II. BACKGROUND

### A. Litigation Summary

Plaintiff Quest Integrity USA, LLC ("Quest") seeks to enjoin Defendant A.Hak Industrial Services US, LLC ("A.Hak") from infringing United States Patent 7,542,874 B2 (the '874 Patent). Quest provides inspection services for oil refinery "furnace tubes," which are serpentine tubes that wrap around a refinery furnace. Furnace tubes contain

ORDER – 1

petroleum products heated to high temperatures during the refining process. Refineries must periodically clean furnace tubes, and inspect them after cleaning. Quest (like others in the industry) uses "pigs," devices that travel along the inside of furnace tubes, to inspect the tubes. The '874 Patent covers methods of displaying the data compiled from pigs in a way that allows technicians to identify the location of defects or other problems in the furnace tubes. Quest claims that its patented display technology is a substantial improvement over other display technologies, which cannot pinpoint the location of problems in the tubes.

Whereas Quest focuses its business on furnace tube inspection, A.Hak provides a broader range of services to the petroleum industry. Furnace tube inspection is just a part of A.Hak's business.

According to Quest, A.Hak and two other entities have begun using display technology that infringes the '874 Patent. According to Quest, that has or will have disastrous consequences for its business. Although Quest claims to dominate the market for furnace tube inspection in large refinery operations, it has less presence at smaller refineries, which typically cannot afford expensive inspection technology. Nonetheless, Quest has made efforts to discount its prices to expand its presence in that niche. A.Hak and the other entities are thwarting those efforts by offering lowball prices to smaller refineries for services that allegedly use Quest's patented display technology. Quest also claims that it is losing customers as a result of the prices A.Hak and the other entities are offering. It claims that money cannot compensate it for the lost business opportunities, lost market share, and price erosion that is the result of this unlawful competition.

Quest sued A.Hak and the other two entities and filed motions for preliminary inunctions.[1] As to the latter two entities, Quest sued in the United States District Court for the District of Delaware. Last month, that court denied Quest's motion for a

---

[1] Quest sued in this court in late December 2014, withdrew a motion for preliminary injunction that it filed in January 2015, then agreed to a briefing schedule on a new motion for injunction under which the parties did not complete briefing until May 2015.

ORDER – 2

1 preliminary injunction. *Quest v. Clean Harbors Indus. Servs., Inc.*, Civ. Nos. 14-1482-
2 SLR, 14-1483-SLR, 2015 U.S. Dist. LEXIS 76696 (D. Del. Jun. 12, 2015). That court
3 found that although Quest had made a prima facie showing of infringement, *id.* at *15,
4 the defendants had raised a substantial question as to the validity of the '874 Patent, *id.* at
5 *21. Putting aside Quest's likelihood of succeeding on the merits of its infringement
6 claim, the court concluded that Quest had proven neither irreparable harm nor a threat of
7 irreparable harm. *Id.* at *21-23.

8 Quest's arguments for a preliminary injunction here mirror those it made in the
9 Delaware litigation, and A.Hak's defenses appear to be the same as those that the
10 Delaware defendants asserted. To reach even that preliminary observation, however, the
11 court had to contend with extensive redactions to the briefs that Quest submitted in
12 support of its injunction motion. It is those redactions, plus hundreds of other requests
13 for redaction or to seal documents in their entirety, that are the focus of this order.

14 **B.    Motions to Seal and Other Requests to Redact and Seal Documents**

15 The parties submitted more than 3,000 pages of documents in support of or in
16 opposition to Quest's motion for an injunction. That is unprecedented, at least in this
17 court. Also unprecedented are the hundreds of requests for redaction and to seal
18 documents in their entirety. What leads to this order, however, is another request that is
19 also a first for this court: Quest asks that if the court rules that any of these documents is
20 to be unsealed or unredacted, it be permitted to withdraw its motion for preliminary
21 injunction rather than reveal the sealed or redacted information.

22 To put that final request in context, the court observes that the parties have filed
23 only two motions to seal. The first (Dkt. # 36), from Quest, targeted the brief in support
24 of its motion for injunction as well as two declarations in support of that motion. The
25 second (Dkt. # 47), from A.Hak, targeted the brief in support of its opposition to the
26 injunction motion, as well as three declarations supporting it. A.Hak did not file that
27 motion to protect material that it wished to keep under seal, it filed it because Quest
28 ORDER – 3

asserted that the material was confidential.  Quest later filed a declaration from its General Manager, Richard Roberts, in support of that request.  He declared that none of the more than 40 redactions to the opposition brief were necessary, but insisted on more than 50 redactions and requests to seal material in the declarations.  Finally, Mr. Roberts filed another declaration[2] with more than 100 requests to seal or redact Quest's reply brief and three declarations supporting it.  All told, Quest continues to insist on more than 250 redactions and requests to seal documents.

### III.  ANALYSIS

This District's local rules and Ninth Circuit law recognize a "strong presumption" in favor of public access to court records.  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); Local Rules W.D. Wash. LCR 5(g).  A court cannot allow documents to remain under seal unless it articulates its reasons for doing so.  *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) (vacating order sealing, without explanation, documents submitted in support of injunction motion).  In general, the party seeking to shield litigation documents from public view must show "compelling reasons" for doing so, and the court must balance the reasons the party articulates against the public's interest in understanding the judicial process, the general preference for access and disclosure, and other policies favoring disclosure.  *Kamakana*, 447 F.3d at 1178-79.  So far as the court is aware, the Ninth Circuit itself has articulated only a single exception to the "compelling reasons" standard applicable in ordinary civil litigation.  That exception applies to materials exchanged in discovery that a party deems confidential, when those materials are used in connection with a non-dispositive motion.  *Id.* at 1179-80.  When that exception applies, a party need only make a "particularized showing" to meet the "good cause" standard of Federal Rule of Civil Procedure 26(c).  *Id.* (quoting *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1138 (9th Cir. 2003).

---

[2] Mr. Roberts stated that his declaration was in support of "Quest's Motion for Permission to File Documents Under Seal (PI Reply)," but Quest filed no motion to seal in support of its reply.

ORDER – 4

To the extent Quest argues that it can avoid application of the "compelling reasons" standard to its preliminary injunction motion, the court rules that it cannot. The court's review of the briefs alone shows that much of the material Quest seeks to shield from public view is critical to its request for an injunction. Most of the redactions that Quest has insisted upon relate not to protecting the display technology at issue, but rather to protecting information about Quest's business, including information about its market share, pricing strategies, staffing levels, and details of the business it allegedly lost as a result of A.Hak's infringement. Quest relies on that information to support its assertion that it will suffer irreparable harm absent an injunction, because it will suffer lost market share, price erosion, loss of goodwill, and other adverse impacts on its business that monetary damages cannot remedy. Assuming that Quest's showing of a likelihood of success on the merits is not so weak that the court can avoid considering harm altogether, the court's decision on the injunction motion will depend on Quest's showing of irreparable harm. Even if the court concludes that Quest's case on the merits is weak, it might well take the approach of the Delaware court, and assess irreparable harm to buttress a ruling that no injunction should issue. In short, the material that Quest seeks to seal (or much of it) is essential to the public's understanding of the basis for issuing or not issuing an injunction. For all of the same reasons that the "compelling reasons" standard applies to material supporting a dispositive motion, it applies to at least the vast majority of the redactions and requests to seal that Quest has put before the court.

The court applies the "compelling reasons" standard because it is the default, because the analysis in *Kamakana* compels that result, and because the Ninth Circuit has been reluctant to limit its application to motions merely because they are technically non-dispositive. *See*, *e.g.*, *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 115, 1120 (9th Cir. 2012) (concluding that district court erred by failing to apply "compelling reasons" standard to a *Daubert* motion). The Ninth Circuit has not, so far as the court is aware, considered the application of the "compelling reasons" standard

ORDER – 5

to material supporting a request for a preliminary injunction. District courts have come to different conclusions. *E.g.*, *Yountville Investors, LLC v. Bank of Am., N.A.*, No. C08-425RSM, 2009 U.S. Dist. LEXIS 16516, at *5 (W.D. Wash. Feb. 17, 2009) ("A motion for a preliminary injunction is treated as a dispositive motion . . . ."); *Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584-LHK, 2015 U.S. Dist. LEXIS 88806, at *3 (N.D. Cal. Jul. 7, 2015) ("This Court, and others in this district, have applied the 'compelling reasons' standard in deciding parties' requests to seal materials submitted in connection with motions for preliminary injunction."); *Hanginout, Inc. v. Google, Inc.*, No. 13cv2811 AJB (NLS), 2014 U.S. Dist. LEXIS 40429, at *2-3 (S.D. Cal. Mar. 24, 2014) (applying "good cause" standard after noting that a "motion for preliminary injunction . . . is not a dispositive motion").

Based solely on the court's review of Quest's redactions to the briefs it submitted to support its injunction motion, it is virtually certain that the court will order that Quest must withdraw many of those redactions. The court could identify many of those redactions now, but the balancing that it must conduct will benefit from reaching a determination as to whether Quest can obtain an injunction. Moreover, the court has yet to wrestle with the hundreds of requests to redact or seal material contained in documents supporting the injunction briefs. It suspects, however, that it will order Quest to withdraw a substantial number of those redactions, and that it will deny a substantial number of Quest's request to seal documents.

Ordinarily, the court would not issue an order informing a party that unspecified rulings on requests to redact and seal are forthcoming. The court takes a different approach here for two reasons. First, much of the material that Quest has sealed it has also designated "attorneys' eyes only," which is to say that A.Hak itself has not seen the redacted and sealed material. If the court unseals documents or orders that redactions be withdrawn, A.Hak will see that material. Second, Quest has requested that if the court decides not to permit the documents to be redacted or filed under seal, the court withdraw

ORDER – 6

the documents from the record rather than unseal them. The District's local rules permit Quest to take that approach. LCR 7(g)(6). Taken literally, Quest requests that if the court decides to unseal or unredact *any* of the material it submitted, it be permitted to withdraw its injunction motion rather than have the information revealed.[3]

As noted, it is all but certain that the court will rule that it will not seal or redact a substantial portion of the information that is the subject of Quest's motion. The court will issue a ruling on the documents that will be unsealed and the redactions that will not be permitted before ruling on the injunction motion. Because the court's review reveals that the requests to seal are inextricably intertwined with the resolution of the injunction motion, that ruling will take some time. If, as its motion suggests, Quest is more committed to keeping information confidential than it is in obtaining a ruling on the merits of its preliminary injunction motion, the court urges Quest to consider withdrawing its injunction motion now.

## IV.  CONCLUSION

The "compelling reasons" standard applies to all or most of the hundreds of requests to redact or seal that Quest has submitted. The court is likely to deny many of the request to seal or redact that Quest has submitted. Quest should consider whether to amend its request to withdraw its motion if the court unseals or unredacts anything, or whether to withdraw its motion for injunction in light of the court's likely ruling.

For purely administrative purposes, the court will consolidate the pending motions into a single motion calendar. The court directs the clerk to TERMINATE all pending motions (Dkt. ## 36, 42, 47, 65) and to CREATE A MOTION CALENDAR for May 15, 2015, to correspond to the noting date of the last of those motions. The clerk shall entitle

---

[3] Quest's request to withdraw documents rather than have them unsealed comes only in its initial motion to seal, which applies only to material supporting its initial brief on its injunction motion. Mot. to Seal (Dkt. # 36) at 12. Because Quest filed no other motion to seal, it is not clear whether the request applies to the remainder of Quest's requests to redact or seal. The court assumes that it does, although Quest is welcome to clarify the record.

ORDER – 7

that motion calendar "Plaintiff's Motion for Preliminary Injunction, Motions to Seal, and Plaintiff's Motion to Exclude Testimony of Dr. Leonard Bond."

DATED this 23rd day of July, 2015.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8